on behalf of the appellant, Mr. Brian Sims, on behalf of the appellate, Mr. Kirk Piscopone. Mr. Sims, you may proceed. Morning, Your Honors, my counsel. May it please the court, my name is Brian Sims, I represent the appellant, Kirk Powell, the husband in the marriage that has been dissolved here. The primary issue for consideration before this court is the treatment of Mr. Powell's redemption, redemption, involuntary redemption, as a matter of fact, of his interest in his employer, which was a small, closely held company that he worked for. From that redemption, he received approximately $1 million for his interest in the property after he was terminated from his employment there. Isn't that a gift from the company? It was not a gift, Judge. I would say, if you look at the employment agreement, he received the stock, or the interest in the company, when they signed the agreement that established it. That interest, however, was subject to forfeiture if he did not remain employed there, and the amount of forfeiture would change over time, it would decrease the longer that he was employed there. So that, from a gift perspective, I would say that it was not a gift, because in order for him to receive the benefit of it, he had to remain employed there. Maybe I misread this. I thought he had to, if he was employed there for less than five years, he was not entitled to any compensation under 10%. Am I wrong on that? That's not quite what it was. The way the agreement was structured was, he received his 10% interest in the company when that agreement was signed, which I believe was after he had already started there, but they accepted this agreement. Then that 10% interest was subject to forfeiture if he left employment. Now, if he was there for five years, there was no further, it could not be forfeited. Less than five years, there was a sliding scale as to the amount that was forfeited. You're saying that after five years, he could have left employment and still retained a capital interest in the corporation to the amount of 10%? That is correct. After five years, it didn't matter whether he was still employed there or not. Before the five years, that 10%, before five years, that 10% was going to be liquidated in some way, shape, or form, and like a divorce, his relationship allegedly would have terminated, not only insofar as his day-to-day employment, but whatever interest he might have in further profit sharing or liquidation of the firm. That is correct, Justice, but in addition to that, that 10%, he would not receive that entire 10% interest if he was there less than five years. And here, actually, he was terminated, I believe it was a day or two short of his 30th anniversary, the third anniversary of that agreement, and they treated it as though he had been there for three years. And that was specifically laid out in the agreement that if you're there three years, you get 60%? That is correct, Judge. That is in the agreement. In the agreement, there's a site in my brief to the specific page of that agreement. When the divorce took place, was the interest, equitable interest in the company, valued? My understanding is that it was not valued. It was a marital asset. It was a marital asset that was assigned solely to Mr. Powell, but I have seen, obviously I was not the attorney of record during the divorce, I have seen nothing in any of the documents that indicate what value, if any, was actually assigned to that interest. And at the time of the divorce, how much of the 10% had been realized? Realized in the sense of, let's assume that on the day of the divorce, judgment being entered, he had been terminated. What percentage would he, or what amount of money, what percentage would he have received? It wouldn't have been 60%. It would not have been 60% because that only occurred at the three-year mark, which he had just reached at the time of time. So was it 20 or 40 or 30 or what? I don't have the scale in front of me to compare with the date, but it's clearly, the sliding scales clearly set forth in that agreement that governs all of that. Who drafted the marriage settlement agreement? The parties? As the which attorney? I do not know that answer. Section 65 says Kirk shall keep and interest. It should say keep any interest. That's a typographical error, correct? I would presume so, Judge. Keep any interest he may have had or ultimately acquire in proven partners, et cetera. But what it does not say is that any payments received are not income for purposes of child support. It could have been included, but it was not, correct? That language does not appear in the agreement. Where I would speculate, I would speculate that at the time, none of the parties contemplated that Mr. Powell would be leaving the employment and proven partners at any time in the foreseeable future. It appeared to be a very good relationship. And I believe if you look at the record, it's clear even though he was terminated, all the documents and everything indicate that the termination was quite amicable. And, in fact, if you saw in the record, they agreed to treat it as though it was three years without any issue, even though it was slightly shorter three years. And they even cashed out the entire amount simply because they anticipated an increase in capital gains taxes. And that was just an agreement between the parties. So it's clearly an amicable termination. I'm reading the conclusion of the prayer in your brief, and I'm trying to figure out if it covers or implicitly includes relief whereby the case is remanded back for a determination of what the prorated amounts of equity might have been, such that the difference between the increase in the value of the equitable interest would be attributable as prior property, and thus like a savings account, not income, and what amount or percentage would be deemed an increase, and whether or not that increase would be deemed to be a capital gain or income or whatever. So where in your brief might you have raised those arguments? Judge, Justice, what I would say is our argument is that as a matter of law, this Court has the authority to determine what is and is not income as defined by the statute. The point you seem to be raising, Justice McLaren, is that perhaps there's a difference between the value of Mr. Powell's interest at the time of the divorce. Perhaps that's excludable from income, but any increase after the date of the dissolution is possibly income. Clearly, this Court has the authority upon making that ruling, deciding that that is what the law applicable to this case is. I was suggesting that any equity that was extant at the time of the divorce would be deemed to be a capital asset, so to speak, and would not be income because it was, whatever that value might have been, was abstractly distributed to him, and if at the time it was worth $500,000 but he doesn't realize it until it's liquidated, then he gets $500,000 or whatever amount to be credited against the gains that he had or appreciation subsequent to the date of the divorce. And certainly, if this Court were to determine that that's what the applicable law is, it has the authority then, and I would suggest that the proper calculation for that would be before the trial court, the authority to remand that to the trial court to make that factual examination and determination, given that it appears that that was not a valuation that was done either at the time of the dissolution or during the hearing, the evidentiary hearing that was held. You say if we determine that's what the law is, but you're citing O'Daniel to us, which is exactly, states exactly that. It states, you know, if you get an IRA and that's awarded to you at the time of the divorce, the value of that IRA is not income if you start taking withdrawals from that, but any increase in value due to interest or whatever, dividends or whatever, would be income. I mean, you've cited O'Daniel for that proposition. Of course, that goes contrary to what the Second District said in Linden. But by citing that, then you didn't take it a step further and actually argue either in the trial court or in this Court that some portion of this 10 percent would not be income. Judge, the main reason for that is our argument is that no portion of that, the 10 percent, should be income. Even an increase in value at the time of the, or from the time of the divorce? Isn't that contrary to O'Daniel? O'Daniel does seem to limit that to the initial value of the contribution to the IRA and exclude the gains on that. The issue that we have here is that there was no evidence presented that what if any increase in value in his interest was. It's clear that over the time that he worked there, the company paid out substantial sums and bonuses to my client as well as all the other owners of the case. So there's no evidence that was presented as to what if any increase in value that there was. Well, there was general testimony, Mr. Sims' testimony, that it represented, this 10 percent interest represented income that was earned but not paid, correct? I believe that would be with more respect to his testimony with respect to the capital account, which is different from the actual ownership interest in the company. That the capital account would be, for lack of a better term, the retained earnings that the company would have received but had not paid out or distributed. Why shouldn't the wife or the ex-wife or the children, I should say, be treated any differently in the federal government? If the federal government determines that the capital accounts are income at the time that the profit is realized for purposes of taxation, why shouldn't it be as well for purposes of child support? Well, I would say with respect to that, that the case law is clear that the determination of what is or is not taxable is not the consideration that is asked under the Child Support Act. And they found that when they specifically excluded gifts and loans that a party had received, he argued that, hey, these aren't taxable under the tax code, therefore it's not income. And the court disagrees with that. Well, was he in control of the ability to determine when he was taxed as opposed to this individual who wasn't one of the operating controllers of the company? No. It's one thing when some third party determines when you get paid, when you, and so on and so forth. But it's another one, it's another thing for an ex-spouse to decide whether they get paid in quote-unquote stocks or bonds or income or perks and or, you know, credit card accounts or whatever. And so are the cases you're citing cases where the individual had the ability to control the classification of the benefits he was to be receiving? In the case I was referring to, Judge, it's a situation where a husband was receiving gifts and loans from his parents, which his parents were in the sole control of. And the court determined that just because those might be excluded from income purposes for taxation, that does not mean that they're excluded from the child support statute because it's an entirely different analysis from that under the tax code. So in that case, just as in this one. What's your impression of what income is since its definition seems to be unclear? Income, I think the Supreme Court has defined it fairly clearly as to, it's an increase to the person typically by wages. They indicate when they cite the dictionary. The problem, of course, is not the clarity of the definition. It's application to any particular circumstance. And in this, we certainly have, as I pointed out in my briefs, an unusual circumstance where somebody has an interest. That interest is involuntarily redeemed from him by the company, just as we saw in the Anderson case. And at that point in time, I would argue that just as the Supreme Court found in the graph, that this is a transformation of the asset from one state, which is the interest of the company, to another, which is cash, rather than an actual income payment to him. When your client came into all this money, he certainly could have gone back to the trial court and asked for a modification of the child support. Is it related to that money, correct? He certainly could have done so, Judge. But now he's arguing a windfall. Well, you know, it's clear under the cases that child support is not intended to be a windfall. In this case, my client, Mr. Powell, did not consider this to be income to him. That this was the company that he worked for, redeeming his interest in the company. That interest had been wholly and 100% awarded to him in the dissolution proceedings. And from his perspective, it was not income. With respect to the income he did receive, such as the severance, he received a one-year severance package from him. He continued to pay his child support on that severance package. And he continued to do that initially when he became re-employed. So he was receiving two incomes, and he was paying 28% of both incomes as child support. Your argument, I mean, paragraph 2.2 of the Merit Settlement Agreement, it's clearly contemplated by Jody that any net income from any additional source or bonus that he receives would be considered for purposes of child support. He had to have known that if she found out about this, there was going to be some action. Well, Judge, I would say two things. One, you know, that language itself specifically refers to the bonus, which is income that all the parties contemplated that he would be receiving in the future because they knew that that was one of the ways that he was being paid out. And second, the testimony is completely unrefuted that he sent Jody his tax returns at the end of the year, that he was not trying to hide this from her. The opposing counsel pointed out in his briefs that my client had presented no proof that he had sent those. He testified to that, and despite the fact that Jody testified on the stand, she never once testified that she had not received the tax returns that Mr. Powlett said he had sent. And the tax returns would have indicated what? The tax returns would show all of the payments that he had received from? Regardless of what the nature and extent of it are labeled was, it would have shown all the monies that he received from the employer. That's correct. In just the tax returns, I believe, are a portion of the record on appeal. Those could be fully reviewed. I have no further questions. No further questions. Thank you. Mr. Piscopo, you may proceed. Good morning, Your Honors and counsel. I'm Phillip Piscopo, and I represent Jody Powell in this matter. Let me start you off with a quick question. Sure. Kirk shall keep any and any interest, it should be any interest, he may have or ultimately acquire in the company. He shall keep that. That's part of the merrill settlement agreement your client agreed to. Okay. And he gets this $1.08 million. Isn't that his interest in the company? Why doesn't he keep that? Why is that not an asset that was awarded to him in the merrill settlement agreement as opposed to income? Sure. Well, there's a two-fold answer to that, and one of those is that what he received from the company is not just the interest that he had at the time of the dissolution. It's also a substantial capital gain. And, in fact, based on his tax returns, and as Mr. Powell admitted in the testimony, that he received his shares back, but he received it as a capital gain of $1.08 million. So it's not simply that, like, if you take the example out of PBM and make it AT&T, for example, he gets his stock in AT&T. Well, any gain on AT&T, once he realizes that gain, is still going to be income for purposes of child support. Section 505 and Rogers. Well, the capital gain starts from the days employed, and he gets the 10% interest, doesn't it? So, therefore, the basis would be zero? Well, if he had paid something for it, then the basis would be something other than zero. Right. But in this case, he did not pay anything for his capital gains. Right. So, therefore, the value, when it was acquired, assuming on the day of his first day of employment, or the first day of the agreement that said that he got a 10% interest in the company, the basis, the evaluation, the level of interest that, for federal tax purposes, would have been zero. That's correct. And, in fact, the tax returns show that. And so, for purposes of taxation, it would have been $1.08 million. But, for purposes of the divorce, if Justice Burke is correct in reading that clause accurately, the divorce took place some years after the first day of his employment, which meant that for purposes of determining what capital gains should be kept in his own pocket, because it went from zero to, let's say, $750,000 on the day of the divorce, and he's supposed to be able to keep that interest. But, thereafter, it's capital gain that both the federal government says they're entitled to, plus the increment that started from day one. But your client is only entitled to the capital gain from the date of the divorce, or the agreement that says, as you just argued, she's entitled to the capital gains. But, if she's entitled to the capital gains, how do you reconcile, as Justice Burke has pointed out, why she should get the capital gains going back to the date of his employment? Well, that's an interesting thought. The problem was that Kirk never presented any of that evidence before the trial court. He never said, at the time of the divorce, my interest in this company was 10% of the company subject to forfeiture. I mean, I suppose he could have argued that, at the time of the divorce, my interest was valued at X. And then that would have given, well, first of all, us a chance to argue against that, and second, that he would have given the trial court some more evidence to determine, well, what was his, at the time of the divorce? But that isn't in the record, and so he never made any effort. Instead, he just said, well, all of it is excludable. He just decided that none of it can ever be considered for child support purposes. And so the record doesn't have any indication as to what that interest would have been. And now, here in oral argument, for the first time, in fact, he never argued that in his briefs either. At the trial court level, correct me if I'm wrong, it's the burden of the respondent, in this case Mr. Powell, to establish that it's not income? Or is it your client's burden to establish that it was income and not non-income? Well, it's his burden to establish why he shouldn't have to pay any child support, why he was justified in not paying the child support on that income. And we provided the evidence as to what his basis was and what his final thing is. We shouldn't have to go out and make his argument for him. Well, it was a petition for rule to show cause, wasn't it? Yes, Your Honor. Therefore, a petition for rule to show cause places the burden of you establishing sufficient cause upon which the court will then issue a rule and require a response or a defense. So I'm asking you, in the process of preparing and proving up your petition for rule to show cause, what did you establish and what was your burden to establish that there was possible contempt? Well, there are two phases of the contempt. And the first one, which I'll just mention briefly, is that he never told Jody about any of this income. And the statement that Jody didn't deny... You never told her about the existence of these funds, because you're assuming that when you say income, you've already pre-adjudicated the issue, have you not? Well... Income has a legal meaning. Yes, it does. Money or funds, undefined funds, has another meaning. Now, what you're really telling us is that she never received notice of funds being received by Jody. Funds being received by Kirk that enriched Kirk. I'm sorry, Kirk, not Kirk. But it's somewhat presumptuous to say that all of it is income, is it not? Well, I think we can certainly make that claim to the trial court, and we did do that. And then he can present what evidence he believes is appropriate to show that some or all of it is not income, and he chose not to do that. So is this presumption based upon statute or case law? Presumption. That all monies received are income. It's based on the statute and on case law, based on Section 505. Income is income from all sources. So all you have to do is establish in your petition that he received monies. Not that he received income, but he received monies. Yeah, yeah. That he received monies, and then if he believes they're not income, then he can present evidence that they're not income. Just like the person in Rogers. I'm trying to get the terminology as precisely as I think it should be. But that's actually what happened. I'm sorry. Go ahead. Okay, that's what happened in Rogers because the person sought to impose child support on these loans and these gifts they received from the parents. And so the petitioner brought that, and the trial court, I believe it was the trial court, did agree, and the Supreme Court ultimately agreed. When you read the Merit Settlement Agreement, I mean, an argument could be made that all Jody was doing was agreeing at the time of the divorce that she was not going to ask for her share of the 10% interest at that time. But she never, and there's no suggestion anywhere in the Merit Settlement Agreement, that any income later paid out or the interest payments would not be considered income for purposes of child support. That would be correct. And that's the way the common understanding of those two clauses read together. She was agreeing. I'm not asking the court to parcel out my 10% interest, which was marital property at the time. You just hang on to that. But then any income that is received later on will be considered for child support. I'm just not asking it as part of the divorce. Correct? Certainly. And I think you hit on the distinction there because in the part that says that Kirk is getting the interest in PPM, that's part of the property settlement portion of the Merit Settlement Agreement, which has nothing to do with the child support they would accrue on income. It's actually similar to a stock option, which the courts have routinely held, are not, or can be apportioned to each person. However, the income from that is still considered income for purposes of child support. And meanwhile, the child support provision says any additional income and bonuses and not just some of it. And for that reason, I agreed with your comment prior that Kirk really had no reason not to believe that the monies he was getting from the capital account and the capital gains he was getting from his stock interest, there's no reasonable way he could make that they were not income, which is why he never even bothered to tell her about it. And the record shows that Jody did testify that she didn't receive any information about any of these matters until we obtained it in discovery on his motion to modify, which was later filed, regarding his current child support. So the statement that it was unrefuted is simply wrong. Jody did not receive anything until we got it in discovery. In any event, I mean, I raised the expoundable. Are you saying that the income tax returns weren't delivered to your client until after discovery was completed? It depends on which discovery you're talking about. Because there were a couple proceedings in this. The first proceeding was Kirk filing a motion to modify about a year after he received these monies, saying I got a new job and it pays me less, and so therefore I should pay less. It was during discovery on that motion to modify that we received these items. And that was for the first time that Jody learned that he received the $360,000, whatever it is on the capital account, and the $1.08 million on the capital gains. That wasn't shown in any previous tax returns? It wasn't shown. He was obligated quarterly, I think, to present some documentation. Correct. But I think the testimony was he showed it yearly, correct? Well, that was what he said. What Jody said was that it was not given to her at all until we received it in discovery. And the trial court's finding was that she didn't receive it, and so therefore he was found to contend on that issue as well because that was the second part of our contend petition is that he didn't tell her about any of this. And there's no way that it could be. I mean, even granted Justice McLaren's thoughts, there's no way that at least the capital account couldn't be considered income or a substantial portion, if not all, of the capital gains. You're saying that he came in seeking modification while failing to mention all the other outside income that he was not disclosing in order to bolster his position that because of new employment he should be entitled to a reduction in child support. That's absolutely correct. So what he did not bring a motion to modify for was to say that I received all this income, but if this income is given to Jody as child support, if all of it is, then that would be a windfall. He never did bring that, and I don't know. Even if he did, I don't know if that necessarily would have been successful. But we'll never know because we never had a chance to bring out any arguments on that, and he never got a chance to say, well, what's in the best interest of the children? What are their needs? What would bring them in the best position that they would have been had the marriage not been dissolved? None of that was ever presented. So is there a pending modification petition filed by Mr. Kirk? Or has that gone by the boards? The modification on the current support? That has been resolved. That has been resolved? There has been an order entered setting his child support based on his income from his new employer. So that part is all finished. And it's not on appeal to this court either. So the basic facts about the income is that he earned it. They were given to him. They were subject to forfeiture if he left the employee before five years. Even after five years, if for some reason he separated from the company, he still has to pay back the interest, and then the company would determine what it is. It's just not subject to forfeiture anymore. And I believe the forfeiture provisions, I don't have them in front of me, was 20 percent per year. So if he fired in the first year, he gets nothing. If he's fired in the second year, he gets 20 percent. If he's fired in the third year, he gets 40. And if it's in the fourth year, he gets 60. And when he did lose the employment, it was at the 60 level. And so he got the 10 percent interest in the capital account. I'm sorry. If he was fired in the fourth year, going into the fifth year, he would have subtracted 20 percent from 10 percent. It would have been 8 percent rather than 6 percent. Well, the level was 6 percent. I might have misspoke on that, and the record is clear that it was 6 percent. Is it two-tenths of reduction in the total percentage? Per year. Okay. Right. Well, it's actually not two-tenths. I guess my math is two points. Yeah, two points. So at five years, he gets all 10. At four years, he gets 8 percent. Three years, 6 percent or 60 percent. You got it right. Six-tenths or 60 percent. That's correct. And in this case, it was just at the 60 percent level. He was one day short six-tenths. Right. But they gave him the six-tenths, and that's very generous to his family to do that. And as far as the capital account is concerned, there wasn't as much discussed about that. I just thought I'd bring a few points. That's money that was earned by the company and attributed to each member of the company, because like a partnership, an LLC, when it earns income, it's attributed to the members, even if they don't actually get it. In this case, the company retained a chunk of those earnings but then attributed it to Kirk and the other members. Now, there has been some discussion in the upper courts regarding, well, should that be considered income anyway, even if he doesn't get it? And some of the discussions were that if he controlled it, then he should be attributed it anyway because otherwise he can shield the income. That isn't really a question here because here he actually got the money. It was a delayed receipt. He got it in 2010, but the entire capital account was paid out to him. That was clearly earned income. And so when it was paid out to him, that's when he should have to pay the child support on it. And he didn't tell Jody about that either and moreover didn't pay the child support on that either. So we would ask that the judgment be affirmed if you have no other questions. Thank you. Thank you, counsel. Mr. Sims, rebuttal argument. It seems, Mr. Sims, that the opposing counsel has argued that we've raised this issue today about the value of this 10 percent interest on the day of the divorce and then perhaps anything after that according to O'Daniel would be considered income. But that was never presented in the trial court. And I think basically the argument is since you didn't present it there and you haven't presented it really here, that that argument is forfeited. With respect to that, Justice, I take the position that it's the movement's obligation to move forward with proving, with respect to that, the value of the actual amount of the income that they're alleging that Mr. Powell received. And that's what the case they cite in their brief as to making a prima facie argument before it requires any response from my client is as the movement, they have the burden of proving, making a prima facie argument, that Mr. Powell didn't pay child support that he was obligated to pay. And with respect to that, in order to prove that or show that, they've got to show that it's income. And they did show that to the trial courts. The trial court found that they made that prima facie showing. The trial court found that based on the court's ultimate conclusion that the entire amount is income. Would then the burden not shift to you to say what, and you argued that none of this was income, but wouldn't the burden shift to you then to argue either none of it's income or some portion thereof is not income? I would argue that in terms of the burden of going forward, the movement still bears that burden. Have you ever heard of a negative pregnancy? I haven't, Justice. Do you see that it might rise in this situation? I can see the argument. It's clear that in this case, none of the parties considered that fact, that neither the parties nor the judge, everybody was looking at this in its totality, is the entire interest income or not. With respect to that, I'd just like to respond to the question Justice Burkett asked at counsel about Kirk's future interest in the company and point out that the provision that you referred to that assigns Kirk's interest in the company includes not only interest that he has, but any that he may ultimately acquire within proven partners, and that's Section 6.5. And again, that was with respect to the presumption that it was marital property at the time, and Jody was not asking for her fair share of that in the divorce. That's not a concession or an agreement that she's not going to seek any portion of that 10% when it's paid out. With respect, I don't know that it's that clear with respect to, because it refers not only to the interest that he has in the property. Why would any lawyer representing Jody not consider that and say, hey, you've got to protect your interests because someday this is going to be paid out? I would say there's nothing in the marital settlement agreement and from either side that talks to the ultimate payout. What it does reference in that paragraph is not only the interest he has now, but any interest that he may ultimately acquire in proven partners. Again, for purposes of the division of marital property, she agreed to that. She never asked for her fair share, but she never said it's not going to be considered for purposes of child support. And if you read section 2.2 together with 6.5, I think that's the only common sense interpretation of those provisions when they're read together. Am I incorrect? I'm going to say yes or no. It's fine. Justice, I'm not going to say you're incorrect. I would disagree, I think, with that analysis that the language in the marital settlement agreement is broader with respect to the property division. And I would say not to parse your language, but I would not say that she's given up her, quote, fair share of the interest. This was a full marital settlement agreement in which all the property was divided and they agreed that he would get his portion. There was a balance. Right. And, you know, whatever amount the parties assigned to that, this is what they agreed to, that this would be a fair distribution of Kirk's interest in the proven partners now and in the future. In exchange for concessions that he made. Whatever other agreements that he allowed. Without putting words in anyone's mouth, the phraseology appears to suggest that as between the two adults, they have reconciled what interest they might have. But the phraseology does not cover what interest the children might have in the way of income for purposes of child support. And there are cases, to the end of that, there are cases that public policy actually states that it would not cover that. The two parties cannot contract away child support. I understand that, Justice. I would simply point out in this fact, this is not a situation where either party is trying to somehow make sure that or ensure that the children are neglected. And the evidence in the record shows all of the expenses relating to the children. At the time of the trial, my client was paid 80, in excess of 85 percent of those expenses. There's no evidence that the children were receiving more than sufficient child support to maintain them. No further questions? All right. Thank you both counsel for your argument. The case will be taken under advisory.